The opinion of the court was delivered by
Bermudez, J.
This is a mandamus proceeding, the object of which is to compel the Oity of New Orleans to place the relator board on its budget of expenditures for 1889 for the sum of $250,000, which it has failed to do except to the extent of $180,000.
The petition is based on Sec. 71 of Act 81 of 1888, relative to public schools.
That section provides substantially that the Council of New Orleans, in making their annual budget of expenditures, shall include therein the amount de'emed necessary to meet the expenses of the schools, and keep in good repair school houses and grounds, as may* seem just and reasonable, provided it shall not exceed the statement of the School Board to be previously made, and shall not be less than $250,000, whereof $75,000 to be paid out of the reserve fund of 20 per cent, contributed by See. 66 of Act 20 of 1882, and Act 109 of 1886, from which certain claims against the board shall be paid gradually so as to be extingushed in 1895.
The section authorizes the board, if necessary, to enforce its provisions by mandamus.
There is a charge of failure and a prayer for relief.
The defences of the city are a general denial, and the constitutionality of the act on various grounds.
A number of persons claiming an interest intervened, joining the board, and were met by exceptions and answer by the city.
From a judgment dismissing the proceedings and the intervention, the relator and the intervenors have appealed.
*96 The objections of the city to the constitutionality of the act may be summarized as follows:
1. It embraces two objects.
2. It attempts to amend the city charter in a prohibited manner.
3. It is a local or special enactment which was adopted without previous publication of intention, etc.
4. It requires the city to pay, through the Board of Directors, a debt which it does not owe.
5. It requires the city to make an appropriation for school purposes which the city can not be compelled to raise by a school tax.
Counter, the board and the intervenors retort that the City of New Orleans has no legal standing to charge the unconstitutionality of any law affecting her.
Touching this peremptory objection to the right of the city to stand in judgment which must be determined at the threshold, it might suffice to say that, however absolute and broad the powers of the General Assembly may be on the City of New Orleans, their supremacy may be confined within certain boundaries by the State organic law which can not be overleaped, and that when an attempt is made to transgess them the city has an undoubted right to interpose impediments, and to be heard; but it is better that the matter receive further attention.
The principle is well recognized that “where a demand is asserted against a municipality, though of a nature that the Legislature would have a right to require it to incur and discharge; yet, if its legal and equitable obligation is disputed, the corporation has a right to have the dispute settled by the courts and can not be bound by a legislative allowance of the claim.” Cooley on Const. Lim. 232-3.
Indeed, were it not so, the mouth of political organizations, representing the corporators, would remain absolutely muzzled. The corporations would have not only tamely to submit to and passively allow unconstitutional legislation to be executed, but would be constrained to carry it out themselves.
The books are full • of cases in which political corporations have been recognized the privilege of setting up the unconstitutionality of laws under which some -unwarrantable right against their revenue and property was sought to be enforced, and' which in the legality of such defences has been sanctioned.
When, therefore, the courts have said in cases of that category *97 that such corporations can not resist legislation affecting them, they could mean and meant only constitutional and in no way unconstitutional legislation, for the glaring reason that to have meant and said the reverse would have been to have held that municipal corporations must, in all contingencies, accept and further unconstitutional legislation, which would be a monstrous proposition.
The ruling of this court in the recent case of the State ex rel. Nicholls vs. City, 41 An. 156, is no authority to prevent the City of New Orleans from being heard in the instant controversy.
It was a suit in which the Governor, entrusted with the execution of’ the laws, claimed that under the provisions of Act 68 of 1888, entitled “An act creating a Police Board for the City of New Orleans and defining its powers,” it was made the ministerial duty of the Mayor and Couneilmen of New Orleans to proceed to the election of six commissioners, who were with the Mayor, to constitute the Police Board; that they had declined to perform that duty, and that they should be compelled to do so.
The return of the defendants was a charge of unconstitutionality of the act sought to be enforced.
The issue was whether the defendants, the representatives of the corporation as its council, could resist the execution of the law on that plea. It did not involve the question whether the defendant had any legal standing to plead the unconstitutionality of the law, or whether the city’s revenue should or should not be appropriated for' the purposes of the Police Department.
The act contemplated a reorganization of the p’olice force by withdrawing from the Mayor and Council the appointing power and vesting it in a board created by the statute, and it prescribed, as a preliminary matter, that an election should be made by the Council of the commissioners, who, with the Mayor, were to constitute that board.
Although the court catechised the defendants by informing them that it was improper for them lightly to question the validity of the act, which was prima facie constitutional; that it was better that-they withold their resistance until after it had been judicially declared unconstitutional, and that by executing it, their responsibility was sheltered, it did not hold that they did not possess the! right of pleading its unconstitutionality, and that they would noP be heard.
*98 Par from refusing to consider that defence, the court inquired into it and sustained the constitutionality of the act, ordering the defendants to proceed with the election.
Here the controverted question involves the right of the Legislature to dispose, without warrant, and in spite of constitutional inhibition, of a large portion of the city’s revenue for a specific purpose, injuriously, it is claimed,'to other superior purposes; in other words, the power of that body to divert a part of the alimony of the city for an object for which it would not be forced to provide, which is not one of the essential wants and necessities, of which, in amount, is larger than that which the city can consecrate to that end.
In support of her resistance the city invokes the organic law, which prevents the Legislature from so acting, and which has vested it with a discretion which can not be coerced-, and which she has reasonably exercised.
It would pass strange, indeed, if, after the defendants here have been commanded to show cause why the relief sought against them should not be granted, they could be met, when they appear in response, with the objection that they have no standing in judgment. 17 An. 251; 39 An. 11; 11 Wall. 267.
Pretermitting an examination of the constitutional objections affecting the form of the act, previously raised and before mentioned, we will now proceed to inquire and determine the last one which assails the substance of the act, as it may be valid in form, and yet invalid intrinsically.
It is elementary that a State, in the absence of constitutional prohibition, may delegate part of her political and administrative powers to municipal corporations within her borders, which then become State functionaries; and that whenever such delegation may take place, the State can confer on them certain rights, which .she may subsequently extend,' abridge or withdraw, as may seem just and advisable, but without impairing the obligation of contracts.
This privilege of delegation is essential in the very nature of things, as otherwise the local administration necessary for public good would be an impossibility, in consequence of the practical inability of the State general government to well provide by itself for the regulation of administrative matters on numerous important details in the different parts of -the State.
The organic law may, however, cheek the incidental rights of the *99 Legislature, so that when constitutional restrictions have been imposed, the limitation is paramount and the Legislature is impotent.
Indeed, it is a question settled beyond the possibility of reasonable doubt, and which needs no reference to authorities to be verified, that the supremacy of the Legislature over a municipal corporation, in many respects, is restrainable by qualifications placed by the Constitution in terms or by fair implication.
It is as clear that a Legislature can no more transgress a State Constitution than that a convention can violate the Federal Constitution, than that a municipal corporation can override its charter or valid laws affecting it and the Federal or State Constitution.
It therefore follows that when restrictions have been placed by the higher law on the powers of the Legislature, or where the authority with which it is specially vested is clearly limited, the Legislature has no right to compel a municipal corporation to do that which the Constitution says the Legislature may authorize it to do, and if the Legislature undertakes to go beyond its power of authorization, its action is nugatory.
The fundamental questions upon which this authority turns are:
1. Whether the Legislature has stopped the City Council from discretion in the matter of school appropriations, and if it has done so,
2. Whether it has not transgressed the Constitution in requiring an outlay which it could not command.
I.
It is apparent that the Legislature has, in unmistakable language, industriously at first expressed its will that the City Council of New Orleans shall have a discretion in such matters; but it is evident that it subsequently circumscribed the exercise of that discretion, when it provided that the appropriation shall not exceed the amount set forth in the estimate of the board of directors to be submitted be-: fore the annual budget of expenditures is prepared, and shall not be less than $250,000.
It is, therefore, clear that the Legislature intended that the city authorities should not have a discretion to appropriate more than one sum and less than another, and that a breach of duty could be summarily provided against.
II.
Such being the case, the momentous question arises, whether the *100 Legislature had authority to prescribe and command as it did in this case requiring an appropriation.
The City of New Orleans is a political organization, recognized and protected by the Constitution and by legislation under its provisions. It enjoys the privilege of a municipal corporation, possesses all the-inherent powers necessary for its existence and maintenance, for the' accomplishment of the purposes for which it was created. It is a, being which can not be blotted out of life. Its citizens have rights, which cannot be divested.
Although under an express constitutional provision, the Legislature' has authority to cancel its charter and remit its inhabitants to an other form of government (Art. 254), that body has no right to compel its representatives, by whatever name, under its actual or under an eventual form of government, to do that which parochial or municipal organizations can not be forced to do.
So that, if by the terms of the Constitution, or by fair implication from them, it appears that the Legislature can not compel the city to make any appropriation for school purposes, it irresistibly follows that the Legislature is not permitted to do so, either by special or general legislation, or by an amendment of the charter.
The system of public education in Louisiana is a State institution,. and as such, is placed under the control and protection of the State by the very terms of the Constitution.
Article 224 provides: “There shall be free public schools established by the General Assembly throughout the State, for the education of all the children of the State, between the ages of six and eighteen years, and the General Assembly shall provide for their establishment, maintenance and support, by taxation or otherwise.. And all moneys so raised, except the poll tax, shall be distributed to each parish, in proportion to the- number of children between the ages of six and eighteen years.”
Inasmuch, however, as the revenue or resources of the State, owing mostly to the restrictions imposed upon her taxing powers, may be inadequate to accomplish those purposes, the Constitution (Art. 229, last sentence) has required the Legislature to provide for the levy of a school tax.
The Article (229) reads: “The Legislature shall provide that every parish may levy a tax for the public schools therein, which shall not exceed the State tax; provided, that with such tax, the *101 whole amount of parish taxes shall not exceed the limit of parish taxation fixed by the Constitution.”
In furtherance of that provision, the Legislature has adopted Act 81 of 1888, by which parochial authorities have been empowered in their discretion to raise such tax.
It is a remarkable circumstance that, had the Constitution not thus expressly provided, the Legislature could not have empowered parishes to assist the State in the establishment, maintenance and support of the public schools, which are a State institution; for Article 202 of the Constitution says: “The taxing power may be exercised by the General Assembly for State purposes and by parishes and municipal corporations under authority granted to them by the General Assembly, for parish and municipal purposes.”
In the case of State ex rel. School Board vs. Police Jury, 40 An. 750, identical in principle to the instant one, it was claimed, under Sec.* 54 of that act, that the police jury of a parish was bound to levy such tax; but the court found and held that the word “ may ” used in the text did not mean “ shall,” and that traced through the last sentence of the article (229) to Act No. 28 of 1877, Sec. 28, it simply meant: are authorized, determining therefore, that the language was permissive and not mandatory.
In that case it was said that a legislation touching public education, in order to be valid must find its authority in the organic law itself, because public education is a State institution to be fostered by the State.
The court consequently held that a legislation such as that before it, could not be and' was not peremptory, as otherwise it would, transcend the legislative power and thus be unconstitutional, concluding that police juries are clothed both by the Constitution and by said Act, with the discretionary or optional power of levying or not, a public school tax, as they might deem proper.
Indeed, were the police jury to exercise its discretion and to levy a tax, this mere fact would not of itself make the tax legal and obligatory ; for, under the very precautionary terms of the Constitution, it would be valid only if, with the whole amount of parish taxes, it did not exceed the limits of parish taxation fixed by the Constitution, and had the parish taxation already reached such limit, no such new tax could be at all levied.
It appears, by reference to Sec. 54 invoked in the case just men *102 tioned, that the Oity of New Orleans was industriously excluded, no doubt, because there was to be, further on, in Sec. 71, some special legislation relative to it, and which is that relied on in this controversy.
The City of New Orleans represents the Parish of Orleans, which has a nominal existence only. The territory over which the charter of the city extends is that of the Parish of Orleans. The Parish of Orleans, independent of the Oity of New Orleans, has no practical or legal existence. It is not governed by a police jury, and is not represented by any parish officer. The parish is the city and the city is the parish.
In the second paragraph of Art. 225 of the Constitution, under the head of public education, the City of New Orleans is treated of and dealt with as if it was the Parish of Orleans, and in Sec. 54 of the Act under consideration, provision is made that towns not exempted under their charters from the payment of parish t^xes and subjected to the burden of taxation, as the parishes are, shall not pay the tax mentioned in the section; for the same is included in the taxes imposed by the parish in which the town is situated.
Now, if the Legislature has no right to require a parish to levy a tax for school purposes, and if the Oity of New Orleans is the Parish of Orleans, or the Parish of Orleans is the City of New Orleans, where is its authority to demand, in place of such tax, that a sum of at least §250,000, or any sum, be appropriated to school purposes?
Even if the city was not the parish, where would be the authority of the Legislature to divert from the alimony of the city, for school purposes, any sum, when, under See. 54, the city would be formally exempted from any contribution in the cause of education.
The city, however, was vested ■ with authority to appropriate a sufficient amount out of her revenue for school purposes by the the first part of Sec. 71 of Act 81 of 1888, which left it a discretion in the matter and which, exclusive of the provisos which follow, is constitutional; and the city did so, taking care that the amount appropriated, added to other sums appropriated for indisputable wants and necessities, should not aggregate more than the amount which the ten mills tax imposed by her would realize.
The city could not have imposed a special school' tax, which, added to other city taxes, would have exceeded the ten mills, which, under Article 209 of the Constitution, it was authorized to levy and the proceeds of which were to stand “for all purposes whatsoever
*103 It appears from the record that the city council, in the exercise of the discretion with which it is vested by Sec. 64 of the charter of 1880, in the apportionment of the alimony of the city has prepared and adopted a budget of the expenditures of the city for 1889, in which provision has been made for all its essential wants and for the public schools, placing these on it for $155,000 to be paid„out of the general revenue, and $25,000 for repairs of school houses, etc., to be taken from the 20 per cent, reserve fund mentioned in See. 71, relied on by the relator, forming a total of $180,000, about one-eighth of the gross amount of expenditures figured upon therein as being $1,415,053.
Considering, therefore, that the provisos of Sec. 71 of Act 81 of 1888 are unconstitutional, not written and not binding on the city; it is ordered that the judgment appealed from be affirmed with costs.